## Glessner et al. v. Pennsylvania Turnpike Commission

*Crowell & Whitehead,* for plaintiffs.

*Portser, Gregg & McConnell,* for defendant.

McWHERTER, J., March 26, 1942.—This case comes before the court on exceptions to plaintiffs' bill of costs. Counsel for the Pennsylvania Turnpike Commission contends that plaintiffs' bill, if otherwise valid, should be reduced by $16 because plaintiffs, residents of Somerset, Pa., charged for 200 miles mileage for serving subpoenas and should be entitled to recover only

costs from Greensburg to North Huntingdon Township where the subpoenas were served, a distance of 40 miles instead of 200, or a total of $4. While it is true that any citizen may serve a subpoena and the decisions hold that a subpoena server is entitled to the actual miles travelled as a general proposition, nevertheless, we must agree with the contention of counsel for defendant that the amount of the bill should be reduced by $16. To hold otherwise would mean that a litigant could send his subpoena to the remotest corner of the State and charge exorbitant fees for service. Plaintiffs are limited to the service from Greensburg, the county seat of Westmoreland County, Pa., to North Huntingdon Township.

The second question raised by defendant's exceptions is that the Pennsylvania Turnpike Commission, being an instrumentality of the Commonwealth, is not liable for costs. While the amount herein involved is small it is realized that from the standpoint of exceptant the question is important in that the same question is involved in each condemnation proceeding by the Turnpike Commission which is still pending and undisposed of.

The Turnpike Commission was created by the Act of May 21, 1937, P. L. 774, as an instrumentality of the State. It was set up as a purely public self-liquidating project. Provision was made for the issue of bonds but the power of incurring liability on the credit of the Commonwealth was expressly denied by the act. This phase of the legislation was construed by the Attorney General in an opinion dated September 28, 1937, reported in Turnpike Revenue Bonds, 30 D & C 261. In that decision the Attorney General marshalled the authorities on the question, and held that the bonds would not be debts of the Commonwealth within the meaning and prohibition of article IX, sec. 4, of the Constitution of Pennsylvania.

Counsel for exceptant has quoted a portion of section

6 of the Act of 1937. That portion of section 6 which deals with costs reads as follows:

"The commission shall be under no obligation to accept and pay for any property condemned or any costs incidental to any condemnation proceedings, and shall, in no event, pay for the same except from the funds provided by this act; and in any condemnation proceedings, the court having jurisdiction of the suit, action or proceedings may make such orders as may be just to the commission and to the owners of the property to be condemned, and may require an undertaking or other security to secure such owners against any loss or damage by reason of the failure of the commission to accept and pay for the property; but such undertaking or security shall impose no liability upon the Commonwealth except such as may be paid from the funds provided under the authority of this act."

The Constitution of the Commonwealth, art. XVI, sec. 8, provides: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction. The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law."

Counsel for plaintiffs relies on the case of Maxwell v. Ludwick Borough, a decision by Judge McConnell of this court, reported in 7 Dist. R. 523, in which he held that the Borough of Ludwick was liable for costs in a

viewers proceeding resulting in an award of damages for change in grade.

In 1808 the legislature passed an act calling upon the Judges of the Supreme Court of Pennsylvania to file a report as to what English statutes were in force in Pennsylvania and to make recommendations as to what English statutes should be incorporated into our law. The report of the judges is found in 3 Binn. and includes the Statute of Gloucester. Judge McConnell held that the Statute of Gloucester was in force in Pennsylvania and relied on that statute as authority for holding the Borough of Ludwick responsible for costs in the above case. We quote Judge McConnell in part as follows (p. 524) :

"It is readily conceded that, without some statute to warrant it, costs are not recoverable. The Act of June 13, 1874, providing for an appeal to the Court of Common Pleas from an assessment by viewers, the 8th section of art. xvi of the constitution and the Act of May 24, 1878, whereby the right to damages is established, are all silent on the subject of the recovery of costs.

"Where, then, does the right to recover them originate? The answer is, in the Statute of Gloucester. This statute is reported by the judges to be in force in Pennsylvania: 3 Binney, 601. Judge Roberts in his digest, page 119, says: 'The Statute of Gloucester, after giving costs in certain actions therein named, declares generally that they shall be recovered wherever damages are recovered. Though the statute only mentions the costs of the writ, the construction has been that it extends to all the costs of the suit. But the statute does not extend to real actions, *scire facias*, prohibition, etc., where no damages were recoverable at the common law. It seems to be settled that under this statute the plaintiff is entitled to costs *in all cases where damages are given by statute to the party grieved, although costs be not mentioned in such statute'. . . .*

"The question was whether the plaintiff ought to have costs, and it was holden that he ought. And by Willes, C. J.: 'The plaintiff is entitled to costs under the Statute of Gloucester, the words of which are, *"that this Act shall hold place in all cases wherein a man recovered damages."* The words in that statute, *"in all cases,"* do, in my opinion, extend to every action at the common law, and to every action upon any statute antecedent or subsequent to the Statute of Gloucester wherever damages are recovered.' The Statute of Gloucester was given effect by Judge Porter in the case from which the foregoing extract was taken. [viz, Beardsley v. Plank Road Co., 5 Clark 308].

" 'Whenever a party has sustained damage and a new Act gives another than a common law remedy, such party may recover costs as well as damages, for the Statute of Gloucester extends to give costs in all cases where damages are given to any plaintiff in any action by any statute after that Parliament': 2 Inst., 289; 6 T. R. 355. . . .

"The Statute of Gloucester may be regarded as part of the common law of Pennsylvania. Whenever a constitution or a statute gives the right to recover damages, the Statute of Gloucester supplements such constitution or statute and gives as an incident to the recovery of such damages in the common law forum the costs of suit."

Without the Statute of Gloucester and without Judge McConnell's decision as authority, the above-quoted portion of section 6 of the Act of May 21, 1937, P. L. 774, should be interpreted as holding that the funds and revenues of the Turnpike Commission should be liable for the payment of costs as well as damages. This section on which counsel for exceptant relies says:

"The commission shall be under no obligation to accept and pay for any property condemned or any costs incidental to any condemnation proceedings, and shall, in no event, pay for the same except from the funds provided by this act . . ."

In other words the same sentence which exempts the commission from liability for costs also exempts the Commission from liability for the payment of damages for property condemned, *except from the funds provided by this act*. If it can be said that this sentence means no costs shall be paid it could also be construed as meaning that no damages should be paid.

The act provides for the issue and sale of bonds by the commission, provides that the property of the turnpike shall not be subject to foreclosure, and authorizes the commission through the collection of tolls to pay off the bonds and all other expenses. The only logical construction that can be placed on the above-quoted portion of section 6 of the act is that the funds of the commission shall be liable for the payment of costs as well as for damages.

### Decree

Now, March 26, 1942, the appeal of defendant from the action of the prothonotary in taxing plaintiffs' costs in the sum of $48.48 be and the same is hereby dismissed, except that the exception to the amount of the bill is sustained and plaintiffs' bill is hereby allowed only in the sum of $32.48.